DAVID E. McALLISTER (AZ BN 021551)
JOSEPHINE E. PIRANIO (AZ BN 020630)
PITE DUNCAN, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92117-0933
Telephone: (619) 590-1300
Facsimile: (619) 590-1385
jsalmon@piteduncan.com

Attorneys for CHEVY CHASE BANK, F.S.B., A DIVISION OF CAPITAL ONE, N.A.

UNITED STATES BANKRUPTCY COURT

DISTRICT OF ARIZONA - PHOENIX DIVISION

| | |
|---|---|
| In re<br><br>CRAIG M. MEIER,<br><br>Debtor(s). | Case No. 2:08-bk-18814-JMM<br><br>Chapter 11<br><br>OBJECTION TO CONFIRMATION OF CHAPTER 11 PLAN<br><br>DATE: August 19, 2009<br>TIME: 10:30 a.m.<br>CTRM: 602 |

Chevy Chase Bank, F.S.B., a division of Capital One, N.A. (hereinafter "Creditor"), secured creditor of the above-entitled Debtor, Craig M. Meier (hereinafter "Debtor"), hereby objects to the Chapter 11 Plan filed by Debtor in the above-referenced matter. The basis of the objection is stated below:

**I.**

**STATEMENT OF FACTS**

1. On or about July 3, 2006, Debtor, for valuable consideration, made, executed and delivered to Chevy Chase Bank, F.S.B. ("Lender") a Promissory Note in the principal sum of $196,434.00 (the "Note"). Pursuant to the Note, Debtor is obligated to make monthly principal and interest payments. A true and correct copy of the Note is attached hereto as exhibit A and incorporated herein by reference.

2. On or about July 3, 2006, Debtor made, executed and delivered to Lender a Deed of Trust (the "Deed of Trust") granting Lender a security interest in certain real property located at 2259 E Desert Squirrel Ct, Green Valley, Arizona 85614 (hereinafter the "Subject Property"), which is more fully described in the Deed of Trust. The Deed of Trust was recorded on July 6, 2006, in the official records of the Pima County Recorder's office. A true and correct copy of the Deed of Trust is attached hereto as exhibit B and incorporated herein by reference.

3. Subsequently, all right, title and interest under the Note and Deed of Trust was assigned to Creditor. A true and correct copy of the Corporation Assignment of Deed of Trust is attached hereto as exhibit C and incorporated herein by reference.

4. On or about December 26, 2008, Debtor filed the instant voluntary Chapter 11 bankruptcy petition, and was assigned case No. 2:08-bk-18814-JMM.

5. On or about May 15, 2009, Debtor filed his Disclosure Statement and proposed Chapter 11 Plan of Reorganization (hereinafter the "Plan").

6. The Debtor's Disclosure Statement represents that the Debtor is a Real Estate Broker and has an interest in multiple ventures that hold properties. Further, the Debtor's Disclosure Statement indicates that the Debtor was prompted to file the instant bankruptcy case as a result of a downfall in the real estate market which in turn slowed the Debtor's income and profits generated from his real estate holdings.

7. The Plan proposes to reduce Creditor's allowed secured claim to a secured value of $105,813.18 (approximately one half of the outstanding loan) to be paid over 30 years at 4.75% interest. In the alternative, Debtors propose paying $211,626.37 over 40 years, with the first 60 months at 2.50% interest and the remaining 420 months at 4.75% interest.

Creditor now objects to the Chapter 11 Plan filed herein by the Debtors.

## II.

## **ARGUMENT**

**A. THE DEBTOR'S PLAN PROVIDES FOR AN INADEQUATE MEANS OF IMPLEMENTATION AND IS NOT PROPOSED IN GOOD FAITH.**

Title 11 U.S.C. §1129(a)(3) requires that a Chapter 11 Plan be proposed in good faith and not by any means forbidden by law. Good faith requires that a Plan achieve a result consistent with the objectives and purposes of the Code and the fundamental fairness in dealing with one's creditors. In re Stolrow's Inc., 84 B.R. 167, 172 (BAP 9th Cir. 1988; In re Joregensen, 66 B.R. 104, 109 (BAP 9th Cir. 1986). Title 11 U.S.C. §1123(a) states that a Plan shall provide adequate means for its implementation. The absence of an adequate means of implementation demonstrates a lack of good faith under Section 1129(a)(3), thereby precluding confirmation of a Chapter 11 Plan. In re Walker, 165 B.R. 994, 1003 (E.D. Va. 1994).

Appropriate implementation is challenged where funding of the Plan depends on the future sales of property of the estate. §6.22[B] Ordin on Contesting Confirmation, 3rd ed. (1999). See also In re Love-Seeman Properties, 49 B.R. 770 (Bankr. D.Haw. 1985), denial of confirmation of plan that was to be implemented by sale of debtor's real estate over a two year period; In re Sutton, denial of confirmation of plan where plan was to be implemented from sale of stock in debtor's business and debtor produced no specific offer of purchase, no specific sale date, and no credible value of the stock; and Walker, plan denied confirmation based upon debtor's previous unsuccessful efforts to sell real estate by which the debtor's plan was to be funded.

In the present case, the Plan proposes that the Debtor will continue to sell property as a Real Estate Agent with the hopes of a market recovery. The Plan fails to provide specific details regarding how the Debtor's business will improve, in light of the recent decline in the real estate market, in order to pay secured creditors. The Plan merely states that the Debtor hopes for a market recovery in this volatile real estate market. Therefore, the court must deny confirmation of the Debtor's proposed Plan or, in the alternative, require the Debtor to amend the Plan to remedy the above referenced defects.

/././

/././

## B. THE DEBTOR HAS FAILED TO DEMONSTRATE THAT THE CHAPTER 11 PLAN IS FEASIBLE

Pursuant to 11 U.S.C. §1129(a)(11), the Court is required to find that "confirmation is not likely to be followed by the liquidation or the need for further financial reorganization of the debtor...." The widely accepted application of this section as stated within the Second Circuit decision of Chase Manhattan Mortgage and Realty Trust v. Bergman (In re Bergman), 585 F.2d, 1171 Id. At 1179, 2nd Cir., 1978), wherein the Court stated:

Under the test of feasibility, the court "used the probability of actual performance of the provisions of the plan. Sincerity, honest, and willingness are not sufficient to make a plan feasible, and neither are visionary promises. The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts."

The Ninth Circuit is consistent in determining whether a Plan meets the requirements of Section 1129(a)(11), wherein it stated, "the bankruptcy court has an obligation to scrutinize the plan carefully to determine whether it offers a reasonable prospect of success and is workable." In re Pizza of Hawaii, Inc., 761 F.2d 1374, 1382 (9th Cir. 1985). To establish feasibility, the plan proponent must demonstrate concrete evidence of a sufficient cash flow to fund and maintain both its operations and obligations under the Plan. S &P, Inc. v. Pfeifer, 189 B.R. 173, 183 (N.D. 1995) (quoting In re SM 104 Ltd., 160 B.R. 202, 234 (Bankr. S.D. Fla 1993)).

The Debtor's Plan indicates that the primary means for effectuating the Plan shall be the "income and commissions from the sales and purchases of the Debtor's clients' properties." The Plan's means for implementation are vague, at best, and fail to demonstrate concrete evidence of a sufficient cash flow to fund and maintain both its operations and obligations under the Plan. By the Debtor's own admissions, the instant bankruptcy petition was filed as a result of a decline in the real estate market which reduced income and profits generated by the Debtor's real estate holdings and partnerships. The Debtor has failed to produce any information establishing that circumstances have

changed and that he will now be able to pay secured creditors on their claims. As a result of the foregoing, the court must deny confirmation of the Debtor's Plan or, in the alternative, require the Debtor to amend the Plan to remedy the above referenced defects.

**C.**     **THE DEBTOR'S PLAN PROPOSES TO REDUCE CREDITOR'S CLAIM BELOW THE FAIR MARKET VALUE OF THE SUBJECT PROPERTY**

11 U.S.C. §1123(b)(5) provides that a plan may-modify the rights of holders of secured claims, other than a claim secured only be a security interest in real property that is the debtor's principal residence. 11 U.S.C. § 506(a) provides that an allowed claim of a creditor secured by a lien on property in which the estate has an interest…is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property.

The Debtor's Plan proposes to reduce Creditor's allowed secured claim to a secured value of $105,813.18 (approximately one half of the outstanding loan). However, Debtor has failed to provide any admissible evidence regarding the value of the Subject Property. As of July 8, 2009, Creditor maintains that the value of the Subject Property was approximately $208,000.00 as evidenced by a Broker Price Opinion. A true and correct copy of the Broker Price Opinion is attached hereto as exhibit D and incorporated herein by reference. As a result, the Debtor's Plan fails to comply with 11 U.S.C. Section 506(a) as it proposes to cram down Creditor's claim below the fair market value of the Subject Property. Accordingly, the court must deny confirmation of the Debtor's Plan or, in the alternative, require the Debtor to amend the Plan to remedy the above referenced defects.

/./././

/./././

/./././

/./././

/./././

### D. THE DEBTOR'S PLAN ATTEMPTS TO REDUCE THE INTEREST RATE PAID ON CREDITOR'S CLAIM WITHOUT IMPLEMENTING THE PRIME-PLUS FORMULA

In the case of Till v. SCS Credit Corp., 541 U.S. 465, (2004), the Supreme Court adopted a two-part "prime-plus" formula for determining the proper interest rate a debtor should pay on a secured claim that complies with the "cram down" provisions of the Bankruptcy Code. The Supreme Court in Till stated that:

> "the approach begins by looking to the national prime rate, reported daily in the press, which reflects the financial market's estimate of the amount a commercial bank should charge a creditworthy commercial borrower to compensate for the opportunity costs of the loan, the risk of inflation, and the relatively slight risk of default. Because bankrupt debtors typically pose a greater risk of nonpayment than solvent commercial borrowers, the approach then requires a bankruptcy court to adjust the prime rate accordingly. The appropriate size of that risk adjustment depends, of course, on such factors as the circumstances of the estate, the nature of the security, and the duration and feasibility of the reorganization plan." *Id.* at 478-479.

In discussing the "prime-plus" interest rate calculation, the Supreme Court went on to explain that in starting from a concededly *low* estimate and adjusting *upward*, the evidentiary burden is placed squarely on the creditors, who are likely to have readier access to any information absent from the debtor's filing. *Id.* at 479.

In the present case, the Debtor proposes paying a 4.75% interest rate on Creditor's secured claim over the next 30 years. Alternatively, the Debtor proposes paying the entire loan amount over the next 40 years, with the first 60 months at 2.50% interest and the remaining 420 months at 4.75% interest. However, Creditor maintains that if the appropriate "prime-plus" formula is used, as proscribed in the Till case, the calculated interest rate to be paid by the Debtors will be significantly higher. In addition, Creditor recognizes that as required in the Till case, the burden of proof for establishing the higher interest rate falls on the creditor, and as a result, Creditor is prepared to offer expert testimony at an evidentiary hearing in order to establish the appropriate interest rate to be paid

/././
/././

by the Debtor, if the parties are unable to agree to a resolution of the applicable interest rate on Creditor's secured claim. Accordingly, the court must deny confirmation of the Debtor's Plan or, in the alternative, require the Debtor to amend the Plan to remedy the above referenced defects.

WHEREFORE, Creditor respectfully requests:

1. That confirmation of the Debtor's Chapter 11 Plan be denied;

2. That Debtor's case be dismissed or converted to a Chapter 7; and

3. For such other and further relief as this Court deems just and proper.

Dated: October 5, 2009

Respectfully submitted,
PITE DUNCAN, LLP

JES 020630
JOSEPHINE E. PIRANIO
Attorneys for Creditor
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
Telephone: (858) 750-7600
Facsimile: (619) 590-1385
mile: (619) 590-1385

- 1 -